[Cite as *In re Na.S.*, 2015-Ohio-4476.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| In re Na.S. aka Na.B., Ni.S. aka Ni.B., Ne.S. | Court of Appeals No. L-15-1159 L-15-1162 |
| | Trial Court No. JC 14238045 |
| | **DECISION AND JUDGMENT** |
| | Decided: October 28, 2015 |

* * * * *

Laurel A. Kendall, for appellant.

Jeremy G. Young, for appellee.

* * * * *

**YARBROUGH, P.J.**

## I. Introduction

{¶ 1} Appellants, P.K. and T.K., appeal the judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating the parental rights of A.S. and S.S. and

awarding permanent custody of the grandchildren, Na.S., Ni.S., and Ne.S. (collectively, "the children"), to appellee, Lucas County Children Services (LCCS). For the following reasons, we affirm.

## A. Facts and Procedural Background

{¶ 2} LCCS became involved in this case in November 2012, when A.S. gave birth to Ne.S. At that time, both A.S. and Ne.S. tested positive for opiates, and A.S. admitted to ongoing heroin usage throughout her pregnancy.

{¶ 3} Once involved in the case, LCCS removed the children from the custody of A.S. and S.S. Na.S. and Ni.S. were placed with S.L., who was not related to the children but had a "very strong relationship" with A.S. Ne.S. was placed with appellants. P.K. is A.S.'s adoptive mother and the maternal grandmother of the children. P.K. is married to T.K.

{¶ 4} One year later, LCCS filed a motion for a transfer of custody of the children to appellants. The motion was filed at the request of S.L., who stated that a change in custody would be best for the children due to "personal issues that she was having with her family regarding the care of the children." LCCS's motion was eventually granted, and, in November 2013, appellants received custody of the children.

{¶ 5} On January 24, 2014, less than three months after appellants took custody of the children, Toledo Police Detective Hahn was called to the hospital to investigate an incident that resulted in a broken leg to Ni.S., who was two-years-old at the time. Upon arrival at the hospital, Hahn interviewed P.K., who stated that the fractured leg happened

2.

when Ni.S. fell off of a table in the living room. Hahn was informed by medical staff that this type of injury (a "spiral break") was not common under these circumstances for a two-year-old boy.

{¶ 6} Hahn then traveled to appellants' home. Once inside, he detected a strong odor of urine. He proceeded to speak with T.K. about the incident, and T.K. stated that the injury occurred when Ni.S. fell off of the dining room table, not the living room table.

{¶ 7} Mary Seng, a patrol officer for the Toledo Police Department, was also present during much of Hahn's investigation, and was alongside Hahn when he visited appellants' home. While there, Seng took several photographs depicting the conditions of the home. Seng testified at the dispositional hearing in this case, stating that the room in which the two boys were sleeping was "very stark and bare." The room was empty and the mattresses upon which the boys slept were lying on the floor with no box springs or sheets. The bed frame was leaning against the wall, and Seng was concerned that it could fall on the boys if they tried to climb on it. Seng acknowledged that the remainder of the house was clean.

{¶ 8} Upon further questioning, T.K. admitted that he dropped Ni.S. while trying to discipline him. He also stated that, after the injury occurred, Ni.S. began crying and was given some Tylenol and ice overnight. Despite his intermittent crying throughout the night, Ni.S. was not taken to the hospital until the following morning. T.K. subsequently pleaded guilty to attempted child endangering as a result of the incident, and, as part of his sentence, was ordered to have no unsupervised contact with minors.

3.

{¶ 9} On January 27, 2014, LCCS filed a complaint in the juvenile court alleging dependency, neglect, and abuse, and moving the court for a shelter care hearing. On the same day the complaint was filed, a shelter care hearing was held, after which LCCS was awarded temporary custody. Upon removing the children from appellants' home, LCCS placed the children with S.S.'s sister, J.J. J.J. is a licensed foster parent residing in Monroe, Michigan.

{¶ 10} At the time of removal, LCCS was not offering case plan services to appellants. Indeed, LCCS filed a motion with the court to have appellants removed as parties in this action. Nonetheless, the LCCS caseworker assigned to this case, DaNelle Flowers, testified that appellants were voluntarily participating in case plan services. Ultimately, the juvenile court denied LCCS's motion to dismiss appellants on June 10, 2014.

{¶ 11} One month later, LCCS filed a motion for permanent custody, seeking the modification of the temporary custody order to an order terminating parental rights and awarding permanent custody of the children to LCCS. In their motion, LCCS asserted that the children could not be placed with either of their parents or appellants within a reasonable time or should not be so placed pursuant to R.C. 2151.414(B)(1)(a), and that permanent custody was in the children's best interests under R.C. 2151.414(D).

{¶ 12} While LCCS's motion remained pending, on August 14, 2014, an amended case plan was filed, adding appellants to the case plan. Through the amended case plan, LCCS eventually provided services for appellants, including mental health assessments

4.

and parenting services. By the time of the dispositional hearing, appellants had either completed, or were in the process of completing, their case plan services.

{¶ 13} Meanwhile, LCCS implemented case plan services for A.S., including a diagnostic assessment, a parenting service, resource management, and domestic violence services. Flowers stated that A.S. participated in case plan services from March 2014 until November 2014, at which time she relapsed on heroin. According to P.K.'s testimony, A.S. started using drugs at an early age. P.K. also stated that she recently ordered A.S. out of her home after she discovered that A.S. stole several items from the home. When P.K. ordered A.S. to leave, A.S. pushed P.K. to the ground and punched her twice in the head. During a prior custody proceeding, P.K. testified that she would no longer allow A.S. back into the home. Despite her prior testimony, P.K. acknowledged that she did allow A.S. to return to the home.

{¶ 14} After A.S.'s relapse, she began to miss appointments with her counselors and failed to appear for drug screenings. Further, A.S. stopped contacting Flowers, and has not seen the children since December 2014. At the hearing, Flowers stated that A.S. has been incarcerated on three separate occasions since LCCS became involved in this case.

{¶ 15} S.S. also participated in case plan services, although his participation was delayed until the summer of 2014 as a result of his incarceration for theft. According to Flowers, S.S.'s participation in case plan services ceased after A.S. relapsed in November 2014. Like A.S., S.S. stopped visiting the children in December 2014.

5.

{¶ 16} The dispositional hearing on LCCS's motion for permanent custody took place on April 14 and 27, 2015. A.S. and S.S. failed to appear at the dispositional hearing, and their attorneys were unaware of their whereabouts, stating that they tried several times to contact them to no avail. Consequently, the attorneys moved to withdraw at the beginning of the hearing, and their motions were granted without opposition.

{¶ 17} In its case-in-chief, LCCS called Flowers to testify regarding the development of the case and the placement of the children with J.J. As to the children's placement, Flowers stated that the children interact positively with J.J. and are doing well under her supervision. Additionally, Flowers stated that J.J. provides a stable, structured environment for the children. Flowers also testified that J.J. would adopt the children if LCCS was awarded permanent custody in this case.

{¶ 18} The children's guardian ad litem, Alanna Paully, also testified at the hearing. When questioned about returning the children to appellants, she voiced several concerns. First, Paully was concerned about the safety of the children in light of the incident in which Ni.S.'s leg was fractured. Second, Paully stated that she was concerned that T.K. "is on a three-year no unsupervised contact via probation. And with four kids under four in the home, I'm finding it hard to see how he is going to be supervised 24 hours a day." Finally, Paully was troubled by the disparity between the "welcoming" condition of the girls' bedroom and the "bare" conditions of the boys' bedroom.

6.

Ultimately, Pauly determined that the children's best interests would be served by a grant of permanent custody to LCCS.[1]  In explaining the basis for her recommendation, Pauly stated the following, in part:

It's first in their best interest to all remain together, and they're in a placement that can facilitate that.  It's also, I believe, in their best interest to be able to visit with [their sister,] which this placement will allow to occur.  And it's in their best interest that they're in a safe, comfortable environment which [J.J.] has provided.

{¶ 19} At the conclusion of the hearing, the juvenile court found that "the parents and legal custodians have not demonstrated that they can make the changes necessary to keep the children safe or provide an adequate, permanent home for the children."  The court went on to state that "LCCS presented evidence that [appellants] were overwhelmed within a few weeks of having the children placed with them.  The pictures of the home clearly demonstrate a dividedly sharp contrast between the boys' room and the girls' room in the grandparents' home."

{¶ 20} In sum, the court found that appellants were not appropriate relatives for the placement of the children, given the "unacceptable risk" involved in exposing the children to further conflict between P.K. and A.S.  Rather, the court determined that an award of permanent custody to LCCS was warranted in light of the custodial history of the children and the injuries sustained by Ni.S. while under appellants' care.

---

[1] Pauly also testified that the children were incapable of expressing their wishes regarding custody due to their ages and lack of understanding of the proceedings.

7.

Consequently, the court granted LCCS's motion for permanent custody, thereby terminating parental rights to the children. It is from this order that appellants now appeal.

{¶ 21} Based upon the belief that no prejudicial error occurred below, appellants' appointed counsel has filed a motion to withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

{¶ 22} *Anders* and *State v. Duncan*, 57 Ohio App.2d 93, 385 N.E.2d 323 (8th Dist.1978), set forth the procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue. In *Anders*, the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous, counsel should so advise the court and request permission to withdraw. *Anders* at 744. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.*

{¶ 23} Counsel must also furnish the client with a copy of the brief and request to withdraw and allow the client sufficient time to raise additional matters. *Id.* Once these requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or it may proceed to a decision on the merits if state law so requires. *Id.*

8.

**B. Assignments of Error**

{¶ 24} In her *Anders* brief, appellants' counsel assigns the following potential errors for our review:

Potential Assignment of Error 1: The trial court erred in finding that Lucas County Children Services proved by clear and convincing evidence that the parents herein failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home. R.,C. 2151.414(E)(1).

Potential Assignment of Error 2: The trial court erred in finding that Lucas County Children Services proved by clear and convincing evidence that maternal grandparents committed abuse, and that the seriousness, nature, or likelihood of recurrence of the abuse makes the children's placement with the maternal grandparents a threat to the children's safety. R.C. 2151.414(E)(15).

Potential Assignment of Error 3: The trial court erred in finding that a foster parent who uses marijuana on a regular basis is appropriate for providing care for minor children adjudicated as abused, neglected or dependent by the Lucas County Domestic Relations Court – Juvenile Division, and placed in the temporary care of Lucas County Children Services.

{¶ 25} Appellants have not filed a brief of their own.

## II. Analysis

{¶ 26} In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.353(A)(4), the juvenile court must find, by clear and convincing evidence, two things: (1) that the children cannot be placed with one of their parents within a reasonable time or should not be placed with their parents under R.C. 2151.414(E), and (2) that permanent custody is in the best interests of the child under R.C. 2151.414(D)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. It is more than a preponderance of the evidence, but does not require proof beyond a reasonable doubt. *Id.*

{¶ 27} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. In conducting a review on manifest weight, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. We recognize that, as the

10.

trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984).

{¶ 28} In counsel's first potential assignment of error, she argues that the trial court erroneously found that A.S. and S.S. failed to substantially remedy the conditions that led to the removal of the children under R.C. 2151.414(E)(1). We disagree.

{¶ 29} R.C. 2151.414(E)(1) provides,

> (E) In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and

repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 30} Here, the record establishes that A.S. was provided case plan services including a diagnostic assessment, parenting services, resource management services, and domestic violence services. In her testimony on this issue, Flowers stated that A.S. initially participated in case plan services but failed to complete the services following her relapse in November 2014. After the relapse, A.S. began to miss appointments with her counselors and failed to appear for drug screenings. Further, A.S. stopped contacting Flowers, and has not seen the children since December 2014.

{¶ 31} Concerning S.S., the record shows that LCCS offered him case plan services, although his participation was delayed until the summer of 2014 as a result of his incarceration for theft. According to Flowers' testimony, S.S.'s participation in case plan services also ended in November 2014, and S.S. stopped visiting the children in December 2014.

{¶ 32} Given the unrefuted testimony of Flowers regarding A.S. and S.S.'s failure to complete their case plan services, as well as the fact that the parents have relapsed on

12.

heroin, the issue that caused the children to be removed from the home in the first place, we find that A.S. and S.S. failed to substantially remedy the conditions that led to the removal of the children despite reasonable case planning designed to help them do so. Consequently, counsel's first potential assignment of error is not well-taken.

{¶ 33} In counsel's second potential assignment of error, she contends that the trial court erred in finding that appellants committed abuse, and that the seriousness, nature, or likelihood of recurrence of such abuse makes the children's placement with appellants a threat to the children's safety under R.C. 2151.414(E)(15).

{¶ 34} As noted above, the trial court, upon a finding that that *one or more* of the factors outlined in R.C. 2151.414(E) exist as to each of the parents, *shall* enter a finding that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent. Having found that the trial court's conclusion with regard to R.C. 2151.414(E)(1) was not against the manifest weight of the evidence, we find that the trial court properly entered a finding that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent. Nonetheless, we will proceed to address counsel's argument under R.C. 2151.414(E)(15).[2]

---

[2] Notably, our review of the juvenile court's judgment entry reveals that the court did not reference or rely upon R.C. 2151.414(E)(15) as a basis for granting LCCS's motion for permanent custody. Rather, the court cited R.C. 2151.414(E)(1), (2), (4), and (10) in support of its finding that the children could be placed with either parent within a reasonable time or should not be placed with either parent.

13.

{¶ 35} R.C. 2151.414(E)(15) directs the juvenile court to enter a finding that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent in cases involving abuse or neglect where "the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety."

{¶ 36} In this case, counsel contends that the trial court erred in finding abuse under R.C. 2151.414(E)(15). Specifically, counsel asserts that the incident in which T.K. allegedly dropped Ni.S. while attempting to discipline him, causing his to suffer a fractured tibia, was merely an accident and does not constitute abuse. However, our review of the record reveals that several witnesses discredited P.K. and T.K.'s version of the incident. In particular, LCCS's medical expert, Dr. Randall Schlievert, testified that the type of fracture suffered by Ni.S. was inconsistent with the explanation given by P.K. and T.K. Indeed, Schlievert testified at length regarding the amount of force necessary to cause a spiral-oblique fracture of the tibia. In his testimony, Schlievert stated that an adult dropping a child of Ni.S.'s size while holding the child at chest height would not "have the forces involved for a two year old's leg to break in this manner." According to Schlievert, this type of fracture is caused "when the limb is used as the handle to grab a child forcefully off the ground." He also indicated that a spiral fracture could occur when "children are thrown down and there is an added force."

{¶ 37} Given the expert testimony outlined above, the conflicting versions of the incident provided to detective Hahn by P.K. and T.K., and T.K.'s subsequent conviction

14.

for attempted child endangering, we find no merit to counsel's proposed argument that the incident was merely an accident. Thus, counsel's second potential assignment of error is not well-taken.

{¶ 38} Finally, counsel asserts, in her third potential assignment of error, that the trial court erred in concluding that J.J. is an appropriate foster parent with whom the children may be placed. Counsel challenges the children's placement with J.J. on the basis that she uses medical marijuana for which she has a prescription that is legal in the state of Michigan where she resides. According to her testimony, J.J. uses marijuana to treat migraine headaches. Flowers testified that J.J.'s use of marijuana was disclosed to LCCS prior to receiving custody of the children. When asked at the hearing about how often she uses marijuana, J.J. stated: "Sometimes once a month, sometimes not at all. It just depends if I can get the headache before it gets too bad to where I get nauseous and can't eat from it." She further stated that she has never used marijuana around the children.

{¶ 39} Upon due consideration, we agree with counsel that the issue of the children's placement in foster care and whether J.J. is an appropriate foster parent is not properly before us as we are reviewing the trial court's grant of permanent custody to LCCS. Thus, we find counsel's third potential assignment of error not well-taken.

15.

### III. Conclusion

{¶ 40} This court, as required under *Anders*, has undertaken our own examination of the record to determine whether any issue of arguable merit is presented for appeal. We have found none. Accordingly, we grant counsel's motion to withdraw.

{¶ 41} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs are hereby assessed to appellants in accordance with App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Stephen A. Yarbrough, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.